UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Brenda Buschle,

    Plaintiff,                                              Case No. 1:16cv471

    v.                                                    Judge Michael R. Barrett

Coach, Inc., *et al.*,

    Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendant Greer Burns & Crain, Ltd.'s Motion to Dismiss (Doc. 9) and Defendants Coach, Inc. and Coach Services, Inc.'s Motion to Dismiss (Doc. 10). These motions have been fully briefed. (Docs. 19, 20, 21, 25, 26). Also before the Court are Plaintiff's Motions for Discovery on Jurisdictional Issues. (Docs. 22, 23).

### I.    BACKGROUND

Plaintiff owns and operates an online business selling new and used genuine designer handbags under the trade name "Designer Handbags Rescue." (Doc. 1, ¶ 7). Until January 2016, Plaintiff used the website address designerhandbagsrescue.com to operate her business. (Id., ¶ 7). Plaintiff's residence also serves as Designer Handbags Rescue's the principle place of business. (Id., ¶ 1). When it was in operation, the website listed Designer Handbags Rescue's address as Plaintiff's home address along with her personal cell phone number with a Cincinnati, Ohio area code. (Id., ¶ 11).

On the website, Plaintiff sold handbags manufactured by Defendants Coach, Inc.

and Coach Services ("Coach"). (Id., ¶ 9). These handbags were sold at a significant discount. (Id.) Defendant Greer Burns & Crain, Ltd. ("GBC") is a Chicago law firm that specializes in intellectual property law. (Id. ¶ 4).

Plaintiff's claims arise out of a federal lawsuit filed by GBC on behalf of Coach in the Northern District of Illinois against Plaintiff and other defendants (the "Illinois Federal Case"). (Doc. 1, Ex. 2). The Illinois Federal Complaint was aimed at online counterfeiters who were based in China and selling unauthorized or unlicensed products featuring Coach's federal-registered trademarks. (Doc. 1-3, PAGE ID #29). Coach and GBC requested an *ex parte* restraining order under the Lanham Act to seize Plaintiff's website. (Id. at ¶ 20, Ex. 3). The restraining order motion was granted, and on April 16, 2015, Coach and GBC took control of Plaintiff's domain name, took possession of Plaintiff's website, and locked Plaintiff out of the website. (Id. at ¶ 22). Coach and GBC then posted the following statements on the website:

> WARNING: Website Shut Down! The online store that formerly used this domain has been disabled, pursuant to a U.S. federal court order, for the sale of products bearing counterfeit trademarks;
>
> To purchase authentic products, visit Coach.com;
>
> This domain was previously held for the sale of alleged counterfeit COACH products. Control of this domain has been transferred to Coach, the rightful owner of the COACH Trademarks, for violation of federal trademark and counterfeiting laws. Coach took this action to protect the Coach brand and consumers unknowingly purchasing counterfeit products; and
>
> We recommend that you contact your payment provider to obtain a refund.

(Id. at ¶ 23, Ex. 1). Coach and GBC also published links to the Illinois Federal Complaint and the *ex parte* motion on the website. (Id. at ¶ 24). Plaintiff alleges that none of the statements about Plaintiff or Designer Handbags Rescue which appeared

on the website or in the Illinois Federal Complaint were true. (Id. at ¶ 26).

On April 17, 2015, Plaintiff's attorney sent correspondence to GBC requesting that Coach return Plaintiff's domain name. (Doc. 1-6, PAGEID#131). Later that same day, Coach returned the domain name to Plaintiff and voluntarily dismissed Plaintiff from the Illinois Federal Case. (Doc. 1-6, PAGEID#136).

A number of Designer Handbags Rescue customers who previously purchased genuine handbags returned their items and others canceled orders. (Id. at ¶ 31). After April 16, 2015, Plaintiff's revenues and profits decreased by approximately fifty percent. (Id. at ¶¶ 33-34). In January of 2016, Plaintiff closed down Designer Handbag Rescue and the website. (Id. at ¶ 35).

Plaintiff brings the following claims against Coach: wrongful seizure under the Lanham Act 15 U.S.C. § 116(d)(11) (Count I); conversion (Count III); defamation (Count V); defamation *per se* (Count VII); unfair and deception trade practices under Ohio Revised Code § 4165.02 (Count IX); violations of the Lanham Act 15 U.S.C. § 1125(a)(1)(B) (Count XI); tortious interference with business relationship (Count XIII); and unfair competition/malicious prosecution (Count XV). Plaintiff brings the following claims against GBC: conversion (Count II); defamation (Count IV); defamation *per se* (Count VI); unfair and deception trade practices under Ohio Revised Code § 4165.02 (Count VIII); violations of the Lanham Act 15 U.S.C. § 1125(a)(1)(B) (Count X); tortious interference with business relationship (Count XI); and unfair competition/malicious prosecution (Count XIV).

In their Motions to Dismiss, Defendants argue that Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(2) because this Court does not

3

have personal jurisdiction over Defendants. Defendants also argue that even if jurisdiction exists, under Federal Rule of Civil Procedure 12(b)(6), Plaintiff's Complaint must be dismissed because it fails to state a claim upon which relief may be granted.

## II. ANALYSIS

### A. Personal Jurisdiction

The plaintiff bears the burden of proving personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). When a court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdiction." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Neogen*, 282 F.3d at 887) (internal citation omitted). A court may, however, "consider the defendant's undisputed factual assertions." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). "[A]lso where . . . there does not appear to be any real dispute over the facts relating to jurisdiction, the *prima facie* proposition loses some of its significance." *Id.* (internal quotation marks omitted).

Plaintiff first argues that Coach has waived its challenge to personal jurisdiction in Ohio because it served an offer of judgment on Plaintiff.

While the voluntary use of certain district court procedures serve as constructive consent to the personal jurisdiction of the district court, not all do. *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (internal citation omitted). Only those submissions,

4

appearances and filings that give "[P]laintiff a reasonable expectation that [Defendants] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking," result in waiver of a personal jurisdiction defense. *Id.* (quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)).

> Under Federal Rule of Civil Procedure 68:
>
> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

Fed. R. Civ. P. 68(a). "The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1, 5, 105 S. Ct. 3012, 3014, 87 L. Ed. 2d 1 (1985) (citing Advisory Committee Note on Rules of Civil Procedure, Report of Proposed Amendments, 5 F.R.D. 433, 483 n. 1 (1946)). There is nothing in Rule 68 which would lead to a reasonable expectation that a defendant will defend the suit on the merits, or that the court must go to some effort that would be wasted if it is later found that personal jurisdiction does not exist. An offer of judgment allows judgment to be entered by the clerk without any regard to the merits of a claim. Moreover, Defendants filed their Motions to Dismiss in this Court on August 22, 2016. Defendant's offer of judgment was made on August 23, 2016. (Doc. 21-4). Therefore, the Court concludes that by serving an offer of judgment on Plaintiff, Defendants did not waive their personal jurisdiction defense.

Next, Plaintiff argues that Defendants had sufficient contacts with Ohio to establish personal jurisdiction. "Under Ohio law, personal jurisdiction over non-resident

5

defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (citing *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 930 N.E.2d 784, 790 (2010); *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 543 (1994)).

Under Ohio's long-arm statute, a court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
>   . . .
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

Ohio Rev. Code § 2307.382(A). Plaintiff argues that all three provisions are applicable. However, even if one of these provisions does apply, Plaintiff must also demonstrate that jurisdiction is proper under the Federal Due Process Clause.

"Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 134 S.Ct. 1115, 1123, 188 L.Ed.2d 12 (2014) ((quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "When the defendant's alleged

6

contact with the forum state occurs via the internet, the plaintiff faces an initial hurdle in showing *where* this internet conduct took place for jurisdictional purposes." *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 677 (6th Cir. 2005) (emphasis in original). Maintaining a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction.[1]  *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). However, specific jurisdiction may exist if the operation of the website satisfies the three *Southern Machine* factors, which incorporate the due process concerns of the defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Means v. United States Conference of Catholic Bishops,* 836 F.3d 643, 649 (6th Cir. 2016) (quoting *Southern Machine Co. v. Mahasco Ind., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).  As the Sixth Circuit has explained:

> There is strand of law which holds that whether a court can assert specific personal jurisdiction over a website owner depends on how interactive the website is with the people in the forum state.  There is another relevant strand of law dealing with whether the court can assert personal jurisdiction over defamatory publications which reach into the forum state.

123 Fed. Appx. at 678.  This Court finds this first line of cases applicable because even though Defendants did not *own* the website, their act of taking control of the website is analogous.  The Court will then turn to the cases addressing defamatory publications,

---

[1]This Court notes that the Sixth Circuit has observed: "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute." *Conn v. Zakharov*, 667 F.3d 705, 717 (6th Cir. 2012).  The Court finds it unnecessary to reach this issue because Plaintiff argues that Defendants' conduct falls within one of the provisions of Ohio's long-arm statute.

which are clearly on point.

Relying on the sliding scale approach established in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997), the Sixth Circuit has identified three levels of interactivity for Internet websites: "(1) passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to exchange information with the host computer." *See, Inc. v. Imago Eyewear, Ltd.*, 167 F. App'x. 518, 522 (6th Cir. 2006) (internal quotation marks and citation omitted). Here, once Defendants seized Plaintiff's website, the website became minimally interactive. Defendants published links to the Illinois Federal Complaint and the *ex parte* motion, but the website was essentially passive and only provided information. A "passive website is insufficient to establish purposeful availment for the purpose of due process." *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 743 (E.D. Mich. 2004) (quoting *McGill v. Gourmet Technologies, Inc.*, 300 F.Supp.2d 501 (E.D. Mich. 2004)). Therefore, Plaintiff cannot establish personal jurisdiction under this line of cases.

In analyzing whether defamatory publications can give rise to specific jurisdiction, courts turn to the "effects test" set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder*, the Supreme Court held that a California court had jurisdiction over two Florida residents who were a writer and editor for the *National Enquirer* magazine. *Id*. at 788-89. The Court explained:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms of both the respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point

8

both of the story and of the harm suffered.

*Id.* at 788-89.

In *Reynolds v. International Amateur Athletic Federation*, the Sixth Circuit applied the *Calder* effects test to the plaintiff's claims for defamation and intentional interference with business relations under Ohio law. 23 F.3d 1110, 1120 (6th Cir. 1994). The Sixth Circuit held that the district court did not have jurisdiction over the defendant, an international track and field organization based in London, England that published a press release saying the plaintiff, a world-class sprinter, tested positive for a banned substance and was suspended. *Id.* The court distinguished *Calder* for several reasons:

> First, the press release concerned Reynolds' activities in Monaco, not Ohio. Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France. Third, Reynolds is an international athlete whose professional reputation is not centered in Ohio. Fourth, the defendant itself did not publish or circulate the report in Ohio . . . . Fifth, Ohio was not the "focal point" of the press release. The fact that the IAAF could foresee that the report would be circulated and have an effect in Ohio is not, in itself enough to create personal jurisdiction.

*Id.*

As the *Reynolds* decision illustrates, the Sixth Circuit has "narrowed the application of the *Calder* 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007); *see also Scotts Co. v. Aventis S.A.*, 145 Fed.Appx. 109, 113 n.1 (6th Cir. 2005) ("[W]e have applied *Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities

9

of the defendant out of which the suit arises."). Under the Sixth Circuit's interpretation of *Calder*, personal jurisdiction over a foreign defendant is proper where the defendant committed (1) an intentional tort, (2) expressly aimed at the forum, and (3) the forum state was the focus of the activities out of which the suit arises. *See Air Products & Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007).

The facts of this case much more closely resemble *Reynolds* than *Calder*. Plaintiff did not have an actual store front located in Ohio. Plaintiff's business was conducted solely on the Internet. While Plaintiff's address in Ohio was listed on the website, Defendants explain that China-based counterfeiters often use false names and addresses to appear that they are located in the United States. (Docs. 25, 26, PAGEID # 736, 755). In any event, as an internet-based business, Plaintiff's business reputation was not centered in Ohio. In addition, Ohio was not the focal point of the information Defendants posted on the website. In fact, Plaintiff has not indicated that any of the visitors to the website during the approximately twenty-eight hours the website was seized were from Ohio. Finally, it was a court in Illinois which entered the *ex parte* order permitting Defendants to seize the website. Defendants had no other contacts with Plaintiff or the website. While Defendants could perhaps foresee that the *ex parte* order would have an effect in Ohio, that alone is not enough to create personal jurisdiction.

The Court notes that even slight acts of purposeful availment can support personal jurisdiction when the acts form the basis for the action. *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) ("[M]aking phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action."). However, "[t]o satisfy

10

the 'arising from' prong of the *Southern Machine* test, the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506-507 (6th Cir. 2014). Plaintiff's claims are based on the seizure of Plaintiff's website and the statements Defendants made on the website. However, there is no evidence that the computers hosting the website are located in Ohio, that the website was viewed by a significant number of Ohio residents, or that the statements made by Defendants on the website are directed toward an Ohio audience or Ohio sales market. Therefore, Plaintiff's claims do not arise from Defendants' activities in Ohio.

If the first two prongs of the *Southern Machine* test are not met, there is little value in analyzing the third prong. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1275 (6th Cir. 1998) ("The final requirement, that the acts of the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable, requires a complex inquiry that we will not pursue, given that the lack of purposeful availment is dispositive."). As the Sixth Circuit has explained, "purposeful availment prong of the *Southern Machine* test is essential to a finding of personal jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Here, the Court finds that the acts of Defendants or the consequences caused by Defendants do not have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable. Therefore, this Court does not have personal jurisdiction over Defendants. *Accord Cadle Co. v. Schlictmann*, 123 F. App'x 675, 679–80 (6th Cir. 2005) (holding Ohio did not have personal jurisdiction over out-of-state defendant who posted online comments about plaintiff because the website

comments, while about an Ohio resident, did not concern that resident's Ohio activities and were not specifically targeted or directed at Ohio readers).

### III. CONCLUSION

Therefore, Defendant Greer Burns & Crain, Ltd.'s Motion to Dismiss (Doc. 9) and Defendants Coach, Inc. and Coach Services, Inc.'s Motion to Dismiss (Doc. 10) are **GRANTED**.  Plaintiff's Motions for Discovery on Jurisdictional Issues (Docs. 22, 23) are **DENIED as MOOT**.  Plaintiff's claims are **DISMISSED without PREJUDICE**.

This matter is **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

                                               */s/ Michael R. Barrett*
                                               JUDGE MICHAEL R. BARRETT